**COUGHLIN DUFFY LLP**
Wall Street Plaza
88 Pine Street, 28th Floor
New York, NY 10005
(212) 483-0105
Attorneys for Plaintiff,
Empire Fire and Marine Insurance Company

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EMPIRE FIRE AND MARINE INSURANCE COMPANY,<br><br>   Plaintiff,<br><br>v.<br><br>IMAGE RENT A CAR INC., WIRELESS PROMOTIONS CELLULAR INC., NEWTON GERMAIN, JEFFRY MIDDLETON and EMMANUEL COICOU,<br><br>   Defendants. | Case No.<br><br>CIVIL ACTION<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>*Document Filed Electronically* |

Plaintiff, Empire Fire and Marine Insurance Company (hereinafter "Empire"), by way of Complaint for Declaratory Judgment and for Damages against Defendants, Image Rent A Car Inc. ("Image"), Wireless Promotions Cellular Inc. ("Wireless"), Newton Germain ("Germain"), Jeffry Middleton ("Middleton") and Emmanuel Coicou ("Coicou") (collectively referred to as the "Defendants"), states as follows:

**NATURE OF THE ACTION**

1. This action stems from a tort claim filed and pending in the Supreme Court of the State of New York, County of Kings, which is entitled, *Emmanuel Coicou v. Wireless Promotions Cellular Inc., Germain Newton, and Image Rent A Car Inc., Index No.: 10744/2010*

(the "Coicou Action") that arose from a motor vehicle personal injury accident that occurred on February 16, 2010 (the "Accident").

2. Empire issued a commercial lines policy, policy number 0229728, to Image, which included a rental automobile liability coverage part (SF 0229728) and an excess rental liability coverage part (SX 0229728) under which Wireless was added as an additional named insured (the "Image Policy").

3. Germain, Wireless and Image have sought coverage under the Image Policy for the Coicou Action.

4. Empire has been, and is currently, providing for the defense of Germain, Wireless and Image in the Coicou Action, subject to a reservation of rights.

5. Germain, Wireless and Image have all failed to cooperate in their counsels' defense of the Coicou Action.

6. In this action, Empire seeks a declaration that: (1) Empire no longer has a duty to defend or indemnify Wireless in the Coicou Action, due to Wireless's failure to cooperate in its defense; (2) Empire no longer has a duty to defend or indemnify Image in the Coicou Action, due to Image's failure to cooperate in its defense; and (3) Empire does not have a duty to defend or indemnify Germain in the Coicou Action, due to, among other reasons, Germain's failure to cooperate in his defense.

7. Coicou also filed a declaratory judgment action in the Supreme Court of the State of New York, County of Kings, which is entitled *Emmanuel Coicou v. Empire Fire & Marine Insurance Company and Zurich American Insurance Company*, Index No.: 10495/2013 (the "Coicou DJ Action"). In the Coicou DJ Action, Empire and Zurich American Insurance Company ("Zurich") responded to Coicou's Complaint with a Motion to Dismiss the Coicou DJ Action. The motion is based upon Coicou's violation of New York Insurance Law §§ 3420(a)(2)

and (b) and his lack of standing to sue Empire and Zurich.  The motion is currently pending and New York precedent clearly supports dismissal of the Coicou DJ Action.

## THE PARTIES

8. Empire is a Nebraska corporation engaged in the insurance business with a statutory home office located at 13810 FNB Parkway, Omaha, Nebraska 68154 and a principal place of business located at 1400 American Lane, Schaumberg, Illinois 60196.  Empire is authorized to transact business and has transacted business in the State of New York.

9. Upon information and belief, Wireless was a New York corporation with its principal place of business located at 4424 Bedford Avenue, Brooklyn, New York 11229, that was authorized to, and did, engage in the businesses of retail sales and automobile rentals in New York.

10. Upon information and belief, Image was and is a New York corporation with its principal place of business located at 391 Empire Boulevard, Brooklyn, New York 11225, that was and is authorized to, and did and does, engage in the business of automobile rentals in New York.

11. Upon information and belief, Germain is a resident of New York, residing at 602 Vermont Street, Apt. 2R, Brooklyn, New York 11207.

12. Upon information and belief, Middleton is a resident of New York, residing at 2620 Glenwood Road, Brooklyn, New York 11210.

13. Upon information and belief, Coicou is a resident of New York, residing at 2864 Faber Terrace, Far Rock, New York 11691.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, §2201 and §2202 because: (i) there is an actual controversy between the parties; (ii) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (iii) the matter is between citizens of different states.

15. Venue is proper under 28 U.S.C. §1391 because defendants Wireless, Image, Germain and Middleton reside in this District and a substantial part of the events giving rise to the claim occurred in this District.

16. Coicou and Middleton are named in this lawsuit as interested parties.

## BACKGROUND

17. In the Coicou Action, Coicou has asserted bodily injury and property damage claims against Wireless, Image and Germain, arising from an alleged motor vehicle accident that occurred on February 16, 2010.

18. Coicou alleges in the Coicou Action that on February 16, 2010 Germain was operating a motor vehicle on South Conduit Avenue, at or near the intersection with Rockaway Boulevard, in the County of Queens, City and State of New York, when he crashed his vehicle into the rear of a motor vehicle owned and operated by Coicou.

19. Upon information and belief, at the time of the Accident, a 2010 black Toyota Camry, with registration number 4T1BF3EK8AU512081, bearing plate number ERS7279 ("Image Motor Vehicle") was operated by Germain.

20. Upon information and belief the Image Motor Vehicle was owned by Wireless.

21. Upon information and belief the Image Motor Vehicle was lent by Wireless to Image, for use in its fleet of rental vehicles, prior to the Accident.

4

22. Upon information and belief, at the time of the Accident, the Image Motor Vehicle was rented by Middleton from Image on February 11, 2010 and due to be returned on February 17, 2010.

23. Upon information and belief, prior to the time of the Accident, Middleton gave the keys of the Image Motor Vehicle to Germain.

24. Upon information and belief, Empire was first notified of the Accident on April 5, 2010.

25. On or about April 28, 2010, Coicou commenced the Coicou Action in New York State Supreme Court, in the County of Kings, under index number 10744/2010.

26. On or about April 29, 2010, Coicou served a Summons and Complaint on Wireless and Germain in the Coicou Action.

27. On or about July 8, 2010, by a letter dated July 1, 2010 enclosing a copy of the Summons and Complaint, Coicou's attorney notified Empire that Coicou had served Wireless on May 14, 2010 and Germain on May 28, 2010 with the Summons and Complaint, and that both had failed to answer. Coicou's attorney also explained in the letter that if Empire did not answer on behalf of Wireless and Germain within 30 days that Coicou would seek a default judgment.

28. Subsequently, Empire retained Cartafalsa, Slattery, Turpin & Lenoff ("Cartafalsa") to represent Germain in the Coicou Action.

29. On or about August 5, 2010, Cartafalsa filed an Answer on behalf of Germain in the Coicou Action.

30. Wireless never notified Empire of either the Accident or the Coicou Action.

31. Subsequently, Empire retained White, Fleischner & Fino, LLP ("White") to represent Wireless in the Coicou Action.

32. On or about December 21, 2010, Coicou filed an Amended Summons and Complaint, which added Image as a defendant in the Coicou Action (the "Amended Complaint). The Amended Complaint was filed on January 4, 2010.

33. Image never notified Empire of either the Accident or the Coicou Action.

34. Empire retained White to defend Image.

35. On or about December 22, 2010, White filed an Answer to the Amended Complaint on behalf of Wireless and Image in the Coicou Action.

36. On or about January 14, 2011, Germain filed an Amended Answer in the Coicou Action.

37. The Amended Complaint alleges that Coicou's bodily injuries were caused by the recklessness, carelessness and negligence of Wireless, Image and Germain.

38. The Amended Complaint alleges that Coicou's property damage was caused by the negligence of Wireless, Image and Germain.

39. The Amended Complaint alleges that Coicou's bodily injuries are permanent, severe, disabling and crippling.

40. Upon information and belief, Coicou's bodily injuries include: subdural hematomas, which were surgically alleviated; traumatic brain injury; compression fractures of several cervical vertebrae; cervical spine disc herniations; and lumbar spine disc bulges.

41. The Amended Complaint also alleges that Coicou's vehicle sustained property damage in the amount of $25,000, and that Coicou sustained damages for the loss of use of his vehicle in the amount of $15,000.

42. Empire is currently providing a defense to the Coicou Action on behalf of Wireless and Image through White.

43. Empire is currently providing a defense to the Coicou Action on behalf of

Germain through Cartafalsa.

44. Upon information and belief, the Coicou Action is currently in the discovery stage of litigation.

## THE INSURANCE POLICY AND ITS RENTAL AUTO LIABILITY PARTS

45. Empire issued the Image Policy, policy number 0229728, to Image for the period October 1, 2009 to October 1, 2010, which was effective on the date of the Accident.

### The Rental Auto Coverage Part

46. The Image Policy contains a rental automobile liability coverage part, specifically designated with policy number SF 0229728, with bodily injury limits of liability of $25,000 each injured person and $50,000 each accident and property damage limits of liability of $10,000 each accident (hereinafter referred to as "Part SF 0229728").

47. The Image Policy also contains an endorsement applicable to Part SF 0229728 under which Wireless qualifies as an additional Named Insured for Part SF 0229728.

48. Part SF 0229728 contains provisions regarding who is an insured and who is not an insured, under which Germain does not qualify for coverage in the Coicou Action.

49. Part SF 0229728 contains a provision under which Wireless, Image, Germain and Middleton must cooperate with Empire in the defense of the Coicou Action.

50. Part SF 0229728 contains a provision under which Wireless, Image, Germain and Middleton must provide statements under oath in the Coicou Action.

### The Excess Rental Auto Coverage Part

51. The Image Policy also contains an excess rental automobile liability coverage part, specifically designated with policy number SX 0229728, with a collective bodily injury and property damage limit of liability of $5,000,000 each accident (hereinafter referred to as "Part SX 0229728").

52. The Image Policy also contains an endorsement applicable to Part SX 0229728 under which Wireless qualifies as an additional Named Insured for Part SX 0229728.

53. Part SX 0229728 contains an exclusion under **SECTION II – EXCLUSIONS**, which bars coverage to any "rentee".

54. Part SX 0229728 contains an exclusion under **SECTION II – EXCLUSIONS**, which bars coverage to "[a]ny other person [in addition to the rentee] . . . using a covered "auto" with the permission of the "rentee", including any liability imposed upon the "rentee" or a permissive user when such liability arises out of the use, possession or control of a covered "auto" by the "rentee" or a permissive user.

55. Upon information and belief, Middleton gave Germain permission to use the Image Motor Vehicle involved in the Accident.

56. Part SX 0229728 contains a provision under which Wireless and Image must cooperate with Empire in the defense of the Coicou Action.

57. Part SX 0229728 contains a provision under which Wireless and Image must provide statements under oath in the Coicou Action.

## WIRELESS, IMAGE AND GERMAIN'S FAILURES TO COOPERATE

58. Upon information and belief, subsequent to the filing of Germain's Answer to Coicou's Amended Complaint discovery began in the Coicou Action.

### Germain

59. When Empire was first notified of the Accident, it was able to contact Germain and obtain some information from him. However, shortly after Empire's first contact with Germain, he ceased communicating with Empire and has not participated in the defense of the Coicou Action.

8

60. Upon being served with the Summons and Complaint in May 2010, Germain failed to send it to Empire. Instead, Empire only received notice of the Coicou Action through Coicou's attorney.

61. Cartafalsa has made repeated attempts to contact Germain, but has never responded to any of their telephone calls or correspondence.

62. Empire and Cartafalsa attempted to locate Germain using the services of an investigator.

63. Upon information and belief, the investigator was able to talk to Germain once by telephone in or about October 2010. He advised Germain that Cartafalsa represented Germain in the Coicou Action.

64. However, subsequent to the single telephone communication, Cartafalsa and Empire have been unsuccessful in their attempts to contact Germain by phone and Germain has not responded to numerous letters sent to two addresses.

65. Cartafalsa and Empire have been unable to obtain the cooperation of Germain in the defense of the Coicou Action.

66. Upon information and belief, in the Coicou Action, Coicou requested that Germain appear for a deposition.

67. Upon information and belief, when Cartafalsa could not produce Germain for a deposition, in or about December 2012, Coicou filed a motion to strike Germain's Answer.

68. The result of that motion was an order requiring Germain to provide Coicou the opportunity to depose him within 45 days or he could be precluded from testifying at trial.

69. Further attempts were made to reach Germain to gain his cooperation in his defense and have him appear for a deposition.

70. Upon information and belief, in or about April 2013, after Cartafalsa was still unable to reach Germain and obtain his cooperation, Coicou filed a second motion to strike Germain's Answer or, in the alternative, preclude Germain from testifying at trial on the issue of liability.

71. Another investigation was done to locate additional potential addresses for Germain. The investigation yielded two potential addresses. One address was found through the Division of Motor Vehicles, 550 East 21st Street, Apartment 3E, Brooklyn, New York. The second address was found using the national Social Security database, 602 Vermont Street, Apartment 2R, Brooklyn, New York 11207.

72. Empire attempted one last time to obtain Germain's cooperation in the defense of the Coicou Action by sending its investigator to visit both addresses in an attempt to hand deliver a letter dated July 5, 2013. The letter explained that Germain's lack of cooperation has led to a motion to strike his Answer in the Coicou Action and that he needed to begin cooperating immediately or could risk losing insurance coverage for the Coicou Action due to his continuing breach of the cooperation clause of Part SF 0229728 of the Image Policy. The investigator visited the 550 East 21st Street address on July 5, 2013, but the door buzzer listed an unrelated party as the current tenant of the residence. A superintendant of the building confirmed that Germain was not a resident at that address. On July 9, 2013, the investigator visited the 602 Vermont Street address during evening hours, but no one answered the door. However the investigator was able to confirm through speaking with a neighbor that Germain did currently reside at that address. The investigator posted the July 5, 2013 letter to Germain's apartment door.

73. Germain has still failed to contact Cartafalsa or Empire, and continues to fail to participate in the defense of the Coicou Action.

**Image**

74.   Empire was already involved in the Coicou Action when Coicou amended his Complaint to include Image as a defendant.  Therefore, when White filed an Answer to the Amended Complaint on behalf of Wireless it also filed the Answer on behalf of Image, as they are both named insureds under the Image Policy.

75.   Upon information and belief, White was originally able to contact Connie Grey at Image.

76.   Upon information and belief, the corporate entity Image was dissolved in January 2011.

77.   Upon information and belief, subsequently, Connie Grey ceased to respond to White's attempts to contact her and efforts to meet with her in person at the offices of Image, located at 391 Empire Boulevard, Brooklyn, New York  11225, were unsuccessful.

78.    Upon information and belief, in the Coicou Action, Coicou requested that Image provide a representative to appear for a deposition.

79.   Thereafter, Empire retained an investigator to attempt to locate one or both of the principals of Image to secure the cooperation of one or both of them in the Coicou Action.  One principal was Gad Sebag ("Sebag") and the other was possibly Sam Silverman ("Silverman").

80.   Empire's investigator conducted database searches that yielded a phone number for Sebag working at a different company, Oraita, Inc., on Kingston Avenue in Brooklyn, New York.  After two attempts, the investigator reached Sebag, who confirmed he was the owner of Image, and that the company was no longer active, so he did not understand why he would need to assist us in the litigation.  He states he would only cooperate if his non-insurance attorney told him to cooperate.  He would not reveal his attorney's name or number.  Empire and White never heard from Sebag again.

81. Upon information and belief, Silverman works or consults at the business currently doing business under the trade name "Image Rent A Car"; however, he has not agreed that he was a principal of Image, nor has he responded to any letters or phone calls.

82. Upon information and belief, White was able through an internet search to identify that Sebag's attorney was Levi Huebner, Esq. ("Huebner"). White subsequently contacted Huebner by telephone, and Huebner initially agreed to speak to Sebag. However, following that telephone conversation, Huebner never returned any telephone calls nor responded to any letters White sent Huebner, dated September 13, 2012 and November 20, 2012. In the November 20, 2012 letter, White specifically informed Huebner that Image was in violation of multiple court orders regarding appearing for depositions and that Coicou's counsel had threatened to file a motion to strike Image's Answer. Still, Huebner and Sebag never contacted White.

83. Upon information and belief, when White could not produce a representative for Image for a deposition, in or about December 2012, Coicou filed a motion to strike Image's Answer.

84. The result of that motion was the same as for Germain, an order requiring Image to provide Coicou the opportunity to depose a corporate representative within 45 days or it could be precluded from testifying at trial.

85. Upon information and belief, White attempted to contact Sebag again, regarding his deposition and to gain his cooperation in Image's defense, by regular and certified mail.

86. Upon information and belief, in or about April 2013, after White was still unable to reach Sebag and obtain his cooperation, Coicou filed a second motion to strike Image's Answer or, in the alternative, preclude Image from testifying at trial on the issue of liability.

87. Another investigation was done to locate the current addresses and contact information for Sebag.  The investigation confirmed that Sebag resided at 1449 Carroll Street, Brooklyn, New York  11213, and that he was linked to a company, Oraita, Inc., located at 353 Kingston Avenue, Brooklyn, New York  11213.

88. Empire attempted one last time to obtain Sebag's cooperation in the defense of the Coicou Action by sending its investigator to attempt to hand deliver a letter dated July 5, 2013.  The letter explained that his lack of cooperation has led to a motion to strike Image's Answer in the Coicou Action and that he needed to begin cooperating immediately or could risk losing Image's insurance coverage for the Coicou Action due to his continuing breach of the cooperation clauses of the Image Policy.  Upon information and belief, On July 5, 2013, at or about 3:00 P.M., the investigator visited Oraita, Inc. at the 353 Kingston Avenue address, which is located on the second floor, and was able to give two copies of the July 5, 2013 letter directly to Sebag.  Upon information and belief, the investigator also informed Sebag of: (1) the urgency of the matter; (2) the date and time for the oral argument of the second motion to strike Image's Answer, July 11, 2013; and (3) the need for him to respond to the letter no later than July 9, 2013.

89. To date, Sebag has still not contacted White or Empire, and continues to fail to cooperate in the defense of Image in the Coicou Action.

90. Upon information and belief,  in addition to hand delivering the July 5, 2013 letter to Sebag, another version of the letter was hand delivered by the investigator on July 8, 2013 to 391 Empire Boulevard, Brooklyn, New York  11225, which is the location currently doing business under the trade name "Image Rent A Car", under a new corporate name, "Group Travel".  The letter was accepted by Connie Grey, who described herself as the manager of the Image facility.

13

91. Although Connie Grey appeared for a deposition in July 2013 in the Coicou Action, Image continues to fail to support efforts to respond to discovery in the Coicou Action.

92. Therefore, to date, Image, and its principal, Sebag, continue to fail to cooperate in its defense of the Coicou Action.

**Wireless**

93. Upon information and belief, Empire and White were unable to contact Wireless prior to filing an Answer, despite many attempts by correspondence to the last known corporate address of Wireless and telephone calls.

94. Upon information and belief, the corporate entity Wireless was dissolved in October 2010.

95. Upon information and belief, in the Coicou Action, Coicou requested that Wireless provide a representative to appear for a deposition.

96. Thereafter, in or about August 2012, White retained an investigator to attempt to locate any principal of Wireless.  Its New York corporate charter stated "Ari" Bloom was the principal of the company, which had a principal place of business at 4424 Bedford Avenue, Brooklyn, New York.  Empire hired an investigator, who determined the corporate address was a private residence owned by "Akivah" Bloom, who also owned a property on Avenue W in Brooklyn, New York.  The investigator interviewed a man at 4424 Bedford Avenue, who denied knowledge of Wireless.  Nevertheless, the investigator left contact information for White, and asked him to telephone the attorney.  No telephone call was ever received by White.

97. The investigator visited the Avenue W address, and spoke with "Akivah" Bloom, who denied any involvement with Wireless and any knowledge of whether any member of his family was involved with the company.

98. The investigator searched national databases based on the 4424 Bedford Avenue address and located a cell phone number for someone named "Arye" Bloom ("Bloom") at that address. The investigator called the cell phone number and Bloom answered. At first, Bloom admitted he owned Wireless, but, when the investigator explained about the lawsuit, Bloom became uncooperative and defensive. Bloom stated he had been in Qatar during the Accident, and that he did not understand why he needed to assist in the defense of Wireless. Bloom also stated that his brother, who he did not name, actually owned Wireless. Then, Bloom hung up on the investigator.

99. Upon information and belief, when White could not produce a representative for Wireless for a deposition, in or about December 2012, Coicou filed a motion to strike Wireless's Answer.

100. The result of that motion was the same as for Germain and Image, an order requiring Wireless to provide Coicou the opportunity to depose a corporate representative within 45 days or it could be precluded from testifying at trial.

101. Upon information and belief, White attempted to contact Bloom again, regarding his deposition and to gain his cooperation in Wireless's defense, by regular and certified mail.

102. Upon information and belief, in or about April 2013, after White was still unable to reach Bloom and obtain his cooperation, Coicou filed a second motion to strike Wireless's Answer or, in the alternative, preclude Wireless from testifying at trial on the issue of liability.

103. Another investigation was done to locate the current addresses and contact information for Bloom. The investigation confirmed that Bloom resided at 4424 Bedford Avenue, Brooklyn, New York 11229.

104. Empire attempted one last time to obtain Bloom's cooperation in the defense of the Coicou Action by sending its investigator to attempt to hand deliver a letter dated July 5,

15

2013. The letter explained that his lack of cooperation has led to a motion to strike Wireless's Answer in the Coicou Action and that he needed to begin cooperating immediately or could risk losing Wireless's insurance coverage for the Coicou Action due to his continuing breach of the cooperation clauses of the Image Policy. Upon information and belief, On July 8, 2013, at or about 6:45 P.M., the investigator visited the 4424 Bedford Avenue address. The investigator saw parcels of mail for Nelson Bloom, and a man answered the door. The man claimed he knows Bloom and agreed to provide Bloom with the July 5, 2013 letter. The man refused to give his name or relationship to Bloom, and would not provide the investigator with a contact number or current address for Bloom. The investigator concluded the visit by asking the man to provide the letter to Bloom by no later than July 9, 2013.

105. Upon information and belief, the investigator also made a site visit to 1456 40th Street, Brooklyn, New York 11218, an address listed for Wireless, and attempted to find Bloom and/or Wireless. The investigator was able to speak with a woman over an intercom at the front door. She was not familiar with Wireless or Bloom. However, as a precaution, the investigator left a copy of the letter affixed to the door.

106. To date, Bloom has still not contacted White or Empire.

107. Therefore, to date, Wireless and its principal, Bloom, continues to fail to cooperate in its defense of the Coicou Action.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR BREACH OF CONTRACT AGAINST GERMAIN

108. Empire repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

109. Empire has been and is continuing to defend Germain in the Coicou Action.

110. The Image Policy obligates Germain to cooperate in his defense.

16

111. The Image Policy also obligates Germain to provide statements under oath.

112. Germain has breached his duty to cooperate in his defense in the Coicou Action.

113. Germain has breached his duty to provide a statement under oath in the Coicou Action

114. Germain's failure to cooperate with Empire in his defense and allow the taking of his statement under oath, has prejudiced Empire, including, but not limited to, preventing Empire from defending against Germain's liability in the Coicou Action.

115. As a proximate result of Germain's breach of his obligations in the Image Policy, Empire has been forced to pay for unnecessary defense costs, and has a greater potential of having to pay a greater judgment to Coicou in the Coicou Action.

116. Pursuant to the terms of the Image policy, based upon Germain's breach of his obligations to cooperate and/or submit to a statement under oath, Empire has no duty to defend or indemnify Germain for the Accident or against the Coicou Action.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR BREACH OF CONTRACT AGAINST IMAGE

117. Empire repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

118. Empire has been and is continuing to defend Image in the Coicou Action.

119. The Image Policy obligates Image to cooperate in its defense.

120. The Image Policy also obligates Image to provide statements under oath.

121. Image has breached its duty to cooperate in its defense in the Coicou Action.

122. Image has breached its duty to provide a statement under oath in the Coicou Action

123. Image's failure to cooperate with Empire in its defense and allow the taking of a representative with knowledge's statement under oath, has prejudiced Empire, including, but not limited to, preventing Empire from defending against Image's liability in the Coicou Action.

124. As a proximate result of Image's breach of its obligations in the Image Policy, Empire has been forced to pay for unnecessary defense costs, and has a greater potential of having to pay a judgment to Coicou in the Coicou Action.

125. Pursuant to the terms of the Image policy, based upon Image's breach of its obligations to cooperate and/or submit to a statement under oath, Empire has no duty to defend or indemnify Image for the Accident or against the Coicou Action.

## AS AND FOR A THIRD CAUSE OF ACTION
## FOR BREACH OF CONTRACT AGAINST WIRELESS

126. Empire repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

127. Empire has been and is continuing to defend Wireless in the Coicou Action.

128. The Image Policy obligates Wireless to cooperate in its defense.

129. The Image Policy also obligates Wireless to provide statements under oath.

130. Wireless has breached its duty to cooperate in its defense in the Coicou Action.

131. Wireless has breached its duty to provide a statement under oath in the Coicou Action

132. Wireless's failure to cooperate with Empire in its defense and allow the taking of a representative with knowledge's statement under oath, has prejudiced Empire, including, but not limited to, preventing Empire from defending against Wireless's liability in the Coicou Action.

133.    As a proximate result of Wireless's breach of its obligations in the Image Policy, Empire has been forced to pay for unnecessary defense costs, and has a greater potential of having to pay a judgment to Coicou in the Coicou Action.

134.    Pursuant to the terms of the Image policy, based upon Wireless's breach of its obligations to cooperate and/or submit to a statement under oath, Empire has no duty to defend or indemnify Wireless for the Accident or against the Coicou Action.

## PRAYER FOR RELIEF

**WHEREFORE**, Empire respectfully requests that the Court award it the following relief:

A.   A declaration that Empire does not have a duty to defend or indemnify Germain, Image and Wireless with regard to the Coicou Action or the Accident; and

B.   For such other and further relief as the Court deems just and proper.

Dated: New York, NY
September 13, 2013

**COUGHLIN DUFFY LLP**

By: __/s/ Adam M. Smith__
Adam M. Smith, Esq. (AS8124)
Adam A. Alster, Esq. (AA1157)
Wall Street Plaza
88 Pine Street, 28th Floor
New York, New York 10005
(212) 483-0105
*Attorneys for Plaintiff,*
*Empire Fire and Marine Insurance Company*